**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JASON G. HELLER,

    Plaintiff,

  v.

CEPIA, L.L.C., et al.,

    Defendants.

No. C 11-01146 JSW

**ORDER REGARDING CROSS-MOTIONS FOR SANCTIONS AND MOTIONS TO DISMISS**

Now before the Court are the cross-motions for sanctions pursuant to Federal Rule of Civil Procedure 11, the motion to dismiss for failure to state a claim filed by Defendant Cepia, L.L.C. ("Cepia"), and the motion to dismiss for lack of personal jurisdiction filed by Defendants A-Tech Product Engineering Company, Limited ("A-Tech") and The Bean Project Company, Limited ("The Bean"). The Court hereby grants in part and denies in part Cepia's motion for sanctions, denies the cross-motion for sanctions filed by Plaintiff Jason G. Heller ("Heller"), grants in part and denies in part Cepia's motion to dismiss, and reserves ruling on A-Tech and The Bean's motion to dismiss and grants Heller's request to conduct jurisdictional discovery.[1]

---

[1] Heller argues that Cepia's motion for Rule 11 sanctions exceeds the page limits permitted by this Court's Standing Orders by one page. Heller urges the Court to disregard Cepia's motion, or the specific sanctions requested, on this ground. However, the Court's Standing Order provides that a one-page summary or argument, if required, will not be counted. Although Cepia's summary of argument is longer than one page, pursuant to the Court's Standing Order, one of those pages shall not be counted against the page limitation. Accordingly, Cepia's brief does not violate this Court's Standing Order.

    The Court DENIES Heller's evidentiary objections to the extent he objects to evidence that the Court considered in adjudicating these motions.

**BACKGROUND**

Heller, as an individual and sole proprietor of Floating Lightbulb Toys, accuses Cepia, A-Tech, The Bean and Ying Leung International Limited ("Ying Leung") of misappropriating his trade secrets in connection with his toy hamster project. Cepia moves to dismiss Heller's claims against it pursuant to Federal Rule of Civil Procedure 12(b) for failure to state a claim. Cepia also moves for sanctions against Heller pursuant to Federal Rule of Civil Procedure 11. Heller, in response, filed a counter-motion for sanctions against Cepia. The Bean and A-Tech move to dismiss this action against them based on lack of personal jurisdiction.

The Court shall address specific additional facts in the remainder of this Order.

**ANALYSIS**

**I.   Cross-Motions for Sanctions.**

   **A.   Applicable Legal Standard.**

Federal Rule of Civil Procedure 11(b) provides, in pertinent part, that:

> [b]y presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -- (1) it is not being presented for any improper purpose, ... (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and] (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).

"Rule 11 imposes a duty on attorneys to certify by their signature that (1) they have read the pleadings or motions they file and (2) the pleading or motion is 'well-grounded in fact', has a colorable basis in law, and is not filed for an improper purpose." *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994). This test is objective. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986). Thus, "if an independent examination reveals 'some credible evidence' in support of a party's statements," a court can conclude a claim is well grounded in fact. *Himaka v. Buddhist Churches of America*, 917 F. Supp. 698, 710 (N.D. Cal. 1995) (citing *Kendrick v. Zanides*, 609 F. Supp. 1162, 1172 (N.D. Cal. 1985)). In contrast, an action is "not 'warranted by law' where no 'plausible, good faith argument can be made by a competent

2

1  attorney' in support of the proposition asserted." *Paciulan v. George*, 38 F. Supp. 2d 1128,
2  1144 (N.D. Cal. 1999) (citing *Zaldivar*, 780 F.2d at 829, 833). This Court may make a finding
3  of improper purpose after conducting its own review of the facts and the law, and "[w]here
4  there is no legal or factual basis for a claim, improper purpose may be deduced." *Id.* at 1144.

5  Finally, sanctions imposed under Rule 11 shall be limited to what is sufficient to deter
6  "repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P.
7  11(c)(2). Rule 11 sanctions may include an award for "reasonable attorneys' fees and other
8  expenses incurred as a direct result of the violation." *Id.*

9  **B.  Discussion.**

10  Cepia moves for sanctions against Heller on the grounds that there is no factual support
11  for the following allegations: (1) "The Bean produced sign-in sheets for its facilities which
12  appear to confirm that representatives of Cepia were, in fact, on the premises of A-Tech/The
13  Bean in September of 2008;" (2) "information obtained from third parties in Hong Kong and
14  China appears to confirm that Cepia has, in fact, had business dealings with both A-Tech/The
15  Bean and Ying Leung in the past;" (3) "[w]hen confronted with this and other information
16  suggesting that Cepia was given access to Mr. Heller and [his company]'s trade secrets and
17  non-trade secret confidential and proprietary business information, A-Tech/The Bean and Ying
18  Leung refused to provide any further information as to the nature of their
19  relationships/communications/contacts with Cepia, and have also refused to provide adequate
20  assurances that they did not, in fact, disclose this information to Cepia." (Compl., ¶ 26.)

21  In support of the first allegation, Heller points to the absence of sign in sheets provided
22  by The Bean for a week during September 2008. Heller argues that The Bean's failure to
23  produce the sign in sheets for a week in September when Heller's prototype of his toy hamster
24  was on The Bean's premises and The Bean's statement that it did know of Cepia "appears to
25  confirm" that Cepia was on The Bean's premises. The problem with this argument is that
26  Heller's allegation implies that there is some affirmative evidence showing that Cepia was on
27  The Bean's premises in September 2008 and he does not have any. Instead, he is drawing an
28  inference from the absence of sign in sheets for a week period and his belief that The Bean

3

actually does know of Cepia. It is possible that Cepia was at The Bean during that week in September. However, contrary to the implication of Heller's allegation, The Bean's sign in sheets do not *confirm* anything. Heller could have alleged that The Bean produced sign in sheets for an eight month period except for a critical week in September 2008 and that, in light of the prior business relationship between Cepia and The Bean, a negative implication may be drawn from its failure to produce such sign in sheets. Unfortunately, Heller went too far when he alleged that the sign in sheets themselves confirmed Cepia's presence at The Bean.

In support of the second allegation, Heller responds that Peter Yeung, his consultant for his toy hamster project, conducted an investigation and that two of his contacts in the toy industry confirmed that Cepia had previous business relationships with Ying Leung, A-Tech and/or The Bean. (Declaration of Jason G. Heller, ¶ 14.) Heller further states that he believes Mr. Yeung has extensive contacts in the toy industry and is honest and trustworthy. (*Id.*) Although the evidence in support of Heller's allegation is far from substantial, the Court finds that there is some, albeit not much, credible evidence to support this allegation.

In his opposition brief, Heller does not respond to the contention that the third allegation referenced above is false. Upon review of the evidence submitted by Heller in opposition to the motion for sanctions, the Court does not find credible evidence to support the allegation that:

> [w]hen confronted with this and other information suggesting that Cepia was given access to Mr. Heller and [his company]'s trade secrets and non-trade secret confidential and proprietary business information, A-Tech/The Bean and Ying Lung refused to provide any further information as to the nature of their relationships/communications/contacts with Cepia, and have also refused to provide adequate assurances that they did not, in fact, disclose this information to Cepia.

In letters dated March 30, 2010, Heller's counsel wrote to A-Tech, The Bean, and Ying Leung. Heller's counsel requested A-Tech, The Bean, and Ying Leung provide Heller with a list of the names and contact information for all persons or entities that had or were given access to Heller's confidential information for the toy hamster project and "to cover the possibility of an inadvertent disclosure of this information," requested sign in sheets or other documentary evidence of all individuals or companies who visited during May through December of 2008. (Declaration of Robert C. Matz, Ex. 1, 3.) The Bean produced its sign in sheets from May 31,

4

1   2008 through December 31, 2008, with the exception of the September 18 through 26, 2008.
2   Heller's counsel subsequently followed up with The Bean inquiring as to the missing sign in
3   sheets from the week in September 2008. He wrote: "it appears that I am missing the sign in
4   sheets for September 18th through September 26th, 2008. Were the offices of The Bean closed
5   during this time? If not, could you please forward the sign in sheets for this period of time to
6   me by e-mail?" (*Id*., Ex. 2.) Heller's counsel also followed up with respect to the individuals
7   who had access to Heller's confidential information: "with respect to the employee information
8   you provided, it is my understanding that the list shows only four 'department heads.' ... For the
9   sake of clarity, would it be possible for you to provide me with a list of *all* individuals who had
10  access to [Heller's] Confidential Information ...." (*Id*.) (emphasis in original.) Lastly, Heller's
11  counsel asked for "the Chinese characters for a company named 'Cepia.'" (*Id*.) The Bean
12  responded by providing two additional names of employees, and by stating that they "missed
13  the period from Sept 18 to Sept. 26" and that "[w]e don't know about this company." (*Id*., Ex.
14  8.) Lee Ying Kit ("Kit"), Managing Director of The Bean, has subsequently clarified that by
15  "missed" he did not mean that The Bean did not maintain sign in sheets for this period, but
16  rather, that these sign in sheets could not be located. (Supplemental Declaration of Lee Ying
17  Kit, ¶ 3.)

18  When Ying Leung apparently did not respond to the letter dated March 30, 2008,
19  Heller's counsel sent Ying Leung a threatening letter. (*Id*., Ex. 4.) However, Heller's counsel
20  did not confront A-Tech or The Bean with information suggesting that Cepia was given access
21  to Heller's confidential information, did not ask for information as to A-Tech or The Bean's
22  relationship, communications, or contacts with Cepia, and did not ask for assurances that they
23  did not disclose Heller's confidential information to Cepia. Accordingly, the Court finds that
24  there is no credible evidence to support Heller's allegation as to A-Tech and The Bean.

25  Cepia further contends that Heller's complaint contains additional false statements
26  regarding his contacts with A-Tech and The Bean and whether A-Tech signed a non-disclosure
27  agreement and/or had any conversations with Heller with respect to his toy hamster project. In
28  response to Cepia's motion, Heller makes clear that he believed The Bean was an alter ego of

5

A-Tech. He submits sufficient credible evidence to support his allegations treating A-Tech and The Bean as one entity, and therefore, the Court denies Cepia motion on this ground.

With respect to the unsupported statements in Heller's complaint, Cepia seeks sanctions of dismissal of the complaint and Cepia's attorneys' fees and expenses incurred in defending this lawsuit. The Court has broad discretion regarding the type and amount of sanctions which may be imposed. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 407 (1990) (district courts have broad discretion to impose Rule 11 sanctions). Although the Court finds that some of Heller's allegations are not sufficiently supported, the Court cannot find, at this procedural stage, that Heller's complaint is completely baseless. Therefore, the Court declines to dismiss Heller's complaint as a sanction. Moreover, the Court finds that the nature of these unsupported allegations stem from exaggerations for which Heller's counsel is culpable. He is the one who drafted the complaint and the allegations at issue. Therefore, the Court finds that sanctioning Heller's counsel, Robert C. Matz in the amount of five thousand dollars is warranted. Mr. Matz shall pay this amount to Cepia pursuant to Rule 11 within ten days of this Order.

With respect to Heller's cross-motion for sanctions, it is difficult to determine the precise basis for Heller's motion. Heller appears to assert that Cepia should be sanctioned for filing an unsupported motion for Rule 11 sanctions and for filing a declaration by Kwan Wing Hong of A-Tech which contains incorrect information. First, the Court finds that Cepia's Rule 11 motion is not frivolous. As discussed above, the Court is granting the motion in part. Second, upon review of the record in support of the parties' cross-motions for sanctions, the Court finds that Cepia's investigation in support of its motion was reasonable under the circumstances and the declarations have sufficient evidentiary support. Heller takes issue with Mr. Kwan's statement that he has "personal knowledge" of the facts in his declaration, including the statement that Heller never spoke to A-Tech about developing a toy hamster. According to Heller, Mr. Kwan could not have personal knowledge of this fact because he was not present at a meeting at which Heller spoke to another A-Tech employee about his toy hamster project. Mr. Kwan could have spoken with this other employee and discovered what

was discussed at that meeting. There also appears to be some confusion regarding the non-disclosure agreements covered. Based on the record before it, the Court cannot find that Cepia filed a false declaration by Mr. Kwan regarding which project or projects the non-disclosure agreements covered. Accordingly, the Court denies Heller's cross-motion for sanctions.

**II.     Cepia's Motion to Dismiss.**

   **A.     Applicable Legal Standards.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

7

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss. A matter may be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In taking judicial notice, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

**B.   Discussion.[2]**

**1.   Heller's Misappropriation Claim.**

The Uniform Trade Secrets Act, as codified in sections 3426 through 3426.11 of the California Civil Code, prohibits actual or threatened misappropriation of trade secrets. To state a claim for misappropriation of trade secrets, a plaintiff must allege "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Cytodyn, Inc. v. Amerimmune Pharmaceuticals, Inc.*, 160 Cal. App. 4th 288, 297 (2008). A trade secret is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *See* Cal. Civ. Code § 3426.1. "Misappropriation" is defined as either the acquisition of a trade secret of another by a person who has reason to know

---

[2] The parties dispute whether Plaintiff's toy hamster and Cepia's Zhu Zhu pets contain similar features which are not common to other toy hamsters. In support of their respective arguments, both Plaintiff and Cepia seek to have the Court take judicial notice of documents which purport to support their respective positions. The Court finds that the parties, through their respective requests for judicial notice, inappropriately seek to have the Court resolve factual disputes on the motion to dismiss. Therefore, the Court denies both parties' requests for judicial notice.

8

1   the trade secret was acquired by improper means, or the disclosure or use of a trade secret
2   without consent by a person who acquired or derived the trade secret by improper means (or in
3   some circumstances, accident or mistake). *See* Cal. Civ. Code § 3426.1 (b). Where, as here, a
4   plaintiff accuses a defendant of indirect misappropriation, *i.e.* the defendant obtains a plaintiff's
5   trade secrets from someone other than plaintiff, the plaintiff must allege facts to show that the
6   defendant "knew or had reason to know before the use or disclosure that the information was a
7   trade secret and knew or had reason to know that the disclosing party had acquired it through
8   improper means or was breaching a duty of confidentiality by disclosing it." *California Police
9   Activities League v. Cal. Police Youth Charities, Inc.*, 2009 WL 537091, *3 (N.D. Cal. March
10  3, 2009); *See also Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F.
11  Supp. 2d 1122, 1136-37 (E.D. Cal. 2008).

12  The Court finds that Heller has sufficiently alleged the existence of trade secrets – the
13  "unique combination of features, functionalities, and accessories" for his toy hamster as
14  documented in his "Hammy! (the Robot Hamster) Specification Brief" and in his "Hammy! (the
15  Robot Hamster) Demo Capability Summary." Moreover, he has sufficiently alleged that he
16  provided his specification brief and demonstration capability summary, which contain his trade
17  secrets, to defendants A-Tech, The Bean and Ying Leung. At the bottom of his toy hamster
18  specification brief, it states that it contains confidential and proprietary information. (Compl., ¶
19  15.) Heller obtained information which he believes confirms that Cepia has has prior business
20  relationships with A-Tech, The Bean and Ying Leung and that Cepia's Zhu Zhu pets
21  incorporate his unique combination of features, functionalities, and accessories. (*Id*., ¶¶ 24-25,
22  26.) During the same month and year as Heller had the prototype for his toy hamster
23  developed, Cepia developed the prototype for its Zhu Zhu pet. (*Id*., ¶¶ 24-25.)

24  Plaintiff has alleged sufficient facts at this procedural stage to raise an inference that
25  Cepia obtained Heller's trade secrets though A-Tech, The Bean or Ying Leung, and knew or
26  should have known that the trade secrets had been obtained or disclosed to Cepia improperly.
27  As discussed above, the Court found that Heller's allegation that The Bean's "sign-in sheets for
28  its facilities which appear to confirm that representatives of Cepia were, in fact, on the premises

9

of A-Tech/The Bean in September 2008" was unsupported. However, the Court noted that Heller had sufficient evidence to support an allegation that The Bean produced sign in sheets for an eight month period except for a critical week in September 2008 and that, in light of the prior business relationship between Cepia and The Bean, a negative implication may be drawn from its failure to produce such sign in sheets. Therefore, the Court denies Cepia's motion to dismiss as to Heller's claim for misappropriation of trade secrets.

### 2. Supersession of Heller's Common Law Claims.

Cepia argues that Heller's common law claims for misappropriation, conversion, unjust enrichment, and trespass to chattels are all superseded[3] by the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426, *et seq*. The "CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'" *Silvaco*, 184 Cal. App. 4th at 236 (quoting Cal. Civ. Code § 3426.7). *Silvaco* also made clear that common law claims premised on the wrongful taking of information that does not qualify as a trade secret are also superseded, unless the plaintiff identifies some law which confers property rights protecting the information. *Id*. at 236-240; *See also Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) ("UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret"). The court in *Silvaco* explained: "'Information' cannot be 'stolen' unless is constitutes *property*. And information is not property unless some law makes it so." *Id*. at 239 (emphasis in original); *see also Mattel*, 782 F. Supp. 2d at 997 (finding that the plaintiff could not identify any property right in its confidential information outside of trade secrets law, "because no such property right exists under California law.")

In response, Heller argues that his confidential information which is not a trade secret is still "property" because he has entered into agreements which provide that any "non-trade

---

[3] Although Cepia uses the word "preemption," the court in *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239-40 (2010), *disapproved on other grounds by Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 337 (2011), made clear that the proper term is "supersede" or "displace." *Id*. at 232 n. 14.

10

secret confidential and proprietary business information disclosed to them would remain his property." (Opp. to Cepia's Mot. to Dismiss at 13.) However, while Heller may be able to state a breach of contract claim against the party or parties who signed this agreement, Heller does not allege that Cepia signed this agreement or is otherwise legally bound by such agreement. Moreover, Heller has not identified any law that confers property rights on his non-trade secret confidential information. Therefore, Heller's common law claims against Cepia premised on the wrongful taking and use of confidential business and proprietary information, regardless of whether such information constitutes trade secrets, are superseded by the CUTSA. Accordingly, the Court grants Cepia's motion to dimiss Heller's common law claims against it.[4]

### III.    A-Tech and The Bean's Motion to Dismiss.

#### A.    Legal Standards for Dismissal for Lack of Personal Jurisdiction.

A defendant may move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The plaintiff bears the burden to establish personal jurisdiction. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). The Court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). However, when "a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss .... That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted); *see also AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (holding that where the trial court rules on jurisdictional issue based on affidavits and without holding an evidentiary hearing, the plaintiff need only make a prima facie showing). Where the facts are not directly controverted, plaintiff's version of the facts is taken as true. *See AT&T*, 94 F.3d at 588. Likewise, conflicts

---

[4] Heller argues that, while he believes that California law governs this action, the applicable law has not yet been determined. If, at some point, the Court concludes that California law does not apply, this Order is without prejudice to Heller moving to reinstate these common law claims upon a showing that the applicable law materially differs from California law with respect to the supersession of common law claims.

11

between the facts contained in the parties' affidavits must be resolved in a plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

"Personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996)). Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The overriding constitutional principle is that maintenance of an action in the forum must not offend "traditional conception[s] of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The defendant's "conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Whether a party's contacts with the forum are sufficient to permit the state to exercise jurisdiction depends upon the facts of each case. *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1251 (9th Cir. 1980). Here, Heller argues that the Court should exercise specific jurisdiction over A-Tech and The Bean. For specific jurisdiction, "the issue of whether jurisdiction will lie turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action." *See Data Disc*, 557 F.2d at 1287; *see also Calder v. Jones*, 465 U.S. 783, 788 (1984) ("In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation.") (internal quotations and citation omitted).

Specific jurisdiction over a defendant exists where: (1) the defendant has purposefully directed his or her activities at residents of the forum state or the forum state itself; (2) the

plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger,* 374 F.3d at 802; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-77 (1985). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Schwarzenegger*, 374 F.3d at 802 (internal citation omitted). "On the other hand, if the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Menken*, 503 F.3d at 1057 (internal quotations and citations omitted). The Ninth Circuit has noted that the "purposeful availment" prong, "[d]espite its label ... includes both purposeful availment and purposeful direction. It may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

"'Purposeful availment' requires that the defendant 'have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (citing *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)). The mere existence of a contract with a party in the forum state does not alone constitute sufficient minimum contacts for jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). "Instead the Court must look to 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine if the defendant's contacts are 'substantial' and not merely 'random, fortuitous, or attenuated.'" *Sher*, 91 F.2d at 1362 (citing *Burger King*, 471 U.S. at 479). Importantly, the "solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment." *Sinatra*, 854 F.2d at 1195 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986).

"[T]he purposeful availment test may also be satisfied if the defendant intentionally directed his activities into the forum state." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements*

13

*Ltd.*, 328 F.3d 1122, 1131 (9th Cir. 2003). When there are tort claims involved in a matter, it is proper to analyze the first prong of the three-part personal jurisdiction test under the *Calder* "effects" test. *See Doe*, 248 F.3d at 924. Under this test, the defendant must have: "(1) committed an intentional act, (2) expressly aimed at the forum state, and (3) caused harm that the defendant knows is likely to be suffered in the forum state." *Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, No. C 07-3983, 2007 WL 4532214 at *4 (N.D. Cal. Dec.19, 2007) (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

In *Bancroft & Masters*, the Ninth Circuit held that, although not every act with foreseeable consequences in the forum state would support specific jurisdiction over a foreign defendant absent "something more," this requirement was satisfied by the "express aiming" component of the *Calder* test. *Bancroft & Masters*, 223 F.3d at 1087. The Court further explained that this "requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.*

**B.     Discussion.**

**1.     Waiver.**

Heller argues that A-Tech and The Bean waived their jurisdictional objections and made a general appearance by filing a stipulation to extend the time to respond to Heller's complaint and by signing declarations filed by another defendant. "An appearance ordinarily is an overt act by which the party comes into court and submits to the jurisdiction of the court. This is an affirmative act involving knowledge of the suit and an intention to appear." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (citation omitted); see also *Wilson v. Moore and Associates, Inc.*, 564 F.2d 366, 369 (9th Cir. 1977) (informal contact between parties constitutes appearance when defendant shows "clear purpose to defend the suit"). In *Benny*, the Ninth Circuit held that filing three motions to extend the time to respond, two of which did not include statements that they were not waiving any affirmative defenses, did not constitute a general waiver. *Id*. at 493. The court reasoned that a motion to extend time to respond does not hint that the defendant will

14

1 file an answer waiving personal jurisdiction defects.  Rather, the motion "is probably best
2 viewed as a holding maneuver while counsel consider how best to proceed."  Additionally,
3 although it would have been a good practice to state that they were not waiving any affirmative
4 defenses, "it would be harsh indeed to label these pre-answer omissions as a general
5 appearance."  *Id*.  Similarly, in *Peacock v. Willis*, 2006 WL 3060134, *8 (E.D. Cal. Oct. 27,
6 2006), the court held that the defendants' filing of a stipulation "to answer or otherwise
7 respond" did not amount to a waiver of personal jurisdiction defects.

8 This Court agrees.  A-Tech and The Bean filed a stipulation to extend the time for them
9 to respond to Heller's complaint.  Although it would have been a better practice if they had
10 specifically stated that they were not waiving any affirmative defenses, it would be a harsh
11 result if the Court were to find the filing of this stipulation constituted a general appearance.
12 The filing of this stipulation did not demonstrate a "clear purpose to defend the suit."  *See*
13 *Wilson*, 564 F.2d at 369.  Similarly, the Court does not find the signing of declarations
14 submitted by another defendant demonstrated a clear purpose by A-Tech and The Bean to
15 defend the suit against them.  Accordingly, the Court finds that they have not waived their right
16 to assert their jurisdictional objections.

17 **2.    Purposeful Availment**

18 Heller argues that because A-Tech signed, and breached, a mutual non-disclosure
19 agreement, A-Tech and The Bean purposefully availed themselves of the benefits and
20 protections of California law.  As noted above, the mere existence of a contract with a party in
21 the forum state is insufficient to demonstrate sufficient minimum contacts.  *See Burger King*,
22 471 U.S. at 478.  Rather, the Court must evaluate the parties' "prior negotiations and
23 contemplated future consequences, along with the terms of the contract and the parties' actual
24 course of dealing."  *Id*. at 479.  The Supreme Court noted that "a contract is ordinarily but an
25 intermediate step serving to tie up prior business negotiations with future consequences which
26 themselves are the real object of the business transaction." *Id*. (internal quotation marks and
27 citation omitted).  Here, alleges that A-Tech signed a "catch all" non disclosure agreement
28 which covered his toy hamster project and that he believed that A-Tech and The Bean were one

15

1 entity. (Declaration of Jason G. Heller, ¶ 6.) Heller further states that he discussed his toy
2 hamster project with an A-Tech employee on May 30, 2008, but he does not state whether or
3 not A-Tech agreed to work on the project. He argues, without much supporting evidence, that
4 The Bean transmitted his toy hamster specification brief and/or disclosed some of his
5 confidential information to A-Tech.[5]

6 With respect to The Bean, Heller does not contend that The Bean signed a non-
7 disclosure agreement. Instead, Heller relies on the agreement signed by A-Tech. "If a
8 corporation is an alter ego of an individual or another corporation, then the district court may
9 disregard the corporate form and exercise personal jurisdiction over the other individual or
10 entity." *ADO Finance, AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 715-16 (C.D. Cal.
11 1996) (citations omitted); see also *Flynt Distributing Company, Inc. v. Harvey*, 734 F.2d 1389,
12 1393 (9th Cir. 1984) ("[W]here a corporation is the *alter ego* of the stockholders so as to justify
13 disregard of the corporate entity[,] jurisdiction over the corporation will support jurisdiction
14 over the stockholders.") (quoting *Sheard v. Superior Court*, 40 Cal. App. 3d 207, 210 (1974)).

15 "Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its
16 stockholders, officers and directors, with separate and distinct liabilities and obligations."
17 *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). Under California
18 law, a corporate identity may be disregarded "where an abuse of the corporate privilege justifies
19 holding the equitable ownership of a corporation liable for the actions of the corporation....
20 Under the alter ego doctrine, then, when the corporate form is used to penetrate a fraud,
21 circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will
22 ignore the corporate entity and deem the corporation's acts to be those of the persons or
23 organizations actually controlling the corporation...." *Id*. (citations omitted). As explained by

---

[5] In support of this argument, Heller cites to Kit's declaration in which Kit states that The Bean asked A-Tech to develop Heller's plush exterior for the prototype. Kit does not state whether The Bean provided Heller's toy hamster specifications or otherwise provided any of Heller's toy hamster trade secrets to A-Tech. (Kit Decl., ¶ 17.) Heller also cites to the declaration of Kwan Wing Hong ("Hong") in which Hong states that A-Tech never spoke to Heller about developing a toy hamster and that Heller never provided A-Tech with his specifications or any other documents related to his toy hamster. (Hong Decl., ¶ 15.) Therefore, it is not clear whether A-Tech ever possessed any of Heller's alleged trade secrets.

16

1 the court in *Sonora Diamond*, "[t]he alter ego doctrine prevents individuals or other
2 corporations from misusing the corporate laws by the device of a sham corporate entity formed
3 for the purpose of committing fraud or other misdeeds." *Id*.

4 To demonstrate that the alter ego doctrine applies, Heller "must make out a prima facie
5 case (1) that there is such unity of interest and ownership that the separate personalities [of the
6 two entities] no longer exist and (2) that failure to disregard [their separate entities] would result
7 in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (internal quotes
8 and citation omitted); *see also Sonora Diamond*, 83 Cal. App. 4th at 538 ("In California, two
9 conditions must be met before the alter ego doctrine will be invoked.  First, there must be such a
10 unity of interest and ownership between the corporation and its equitable owner that the
11 separate personalities of the corporation and the shareholder do not in reality exist.  Second,
12 there must be an inequitable result if the acts in question are treated as those of the corporation
13 alone."). Here, Heller has not yet met this standard.  However, the Court is providing Heller an
14 opportunity to conduct discovery on whether the alter ego doctrine is applicable here.  The
15 Court has broad discretion in determining whether to permit jurisdictional discovery. *See Data*
16 *Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)
17 (holding that district courts have broad discretion to permit discovery to aid in the determination
18 of personal jurisdiction); *see also Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406,
19 430 n.24 (9th Cir. 1977).

20 If Heller provides a supplemental brief after conducting jurisdictional discovery
21 according to the schedule set forth below, he should be careful to demonstrate that his breach of
22 contract plaintiff's claim arises out of or relates to forum-related activities.  The Court notes that
23 the non-disclosure agreement signed by A-Tech provides that it is subject to English
24 jurisdiction and is governed by the laws of England.  (Hong Decl., Ex. A.)   Additionally, Heller
25 is admonished that his supplemental brief, if any, must be filed in compliance with Rule 11.

26 **3. Purposeful Direction.**

27 Because Heller brings intentional tort claims against A-Tech and The Bean, the Court
28 will also apply the *Calder* "effects" test to determine whether the exercise of jurisdiction over

17

1   them is proper. Courts have applied the *Calder* test to torts involving intellectual property. See
2   *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289
3   (9th Cir. 1997) (holding that willful copyright infringement alone was enough to establish
4   purposeful availment), *overruled on other grounds by Feltner v. Columbia Pictures Television*,
5   523 U.S. 340 (1998); *MGM Studios, Inc. v. Grokster Ltd.*, 243 F. Supp. 2d 1073, 1089-90 (C.D.
6   Cal. 2003) (applying effects test to intentional copyright infringement claim); *The 3DO Co v.
7   Poptop Software, Inc.*, 1998 U.S. Dist LEXIS 21281, *9-10 (N.D. Cal. 1998) (finding test
8   applicable to claim for misappropriation of trade secrets).

9   Here, although Heller presents evidence that A-Tech and The Bean were aware that
10   Heller and his company were California citizens, he does not have much circumstantial
11   evidence that A-Tech and The Bean misappropriated any of his trade secrets. In his
12   supplemental brief, Heller clarifies that he is not relying on his information he heard about A-
13   Tech's and/or The Bean's prior relationship with Cepia. Therefore, to show misappropriation,
14   Heller only has his evidence regarding the similarity between his and toy hamster and Cepia's
15   Zhu Zhu Pets and the mere possibility, due to the absence of sign in sheets, that Cepia was at
16   the Bean in September of 2008 when Heller's prototype was there. In light of the absence of
17   any evidence regarding a prior relationship between Cepia and A-Tech and The Bean, the Court
18   cannot say that Heller has presented a prima facie case to show that it is plausible, as opposed to
19   a sheer possibility, that Cepia was at The Bean in September of 2008.[6] Therefore, Heller has
20   not presented a prima facie case of misappropriation of trade secrets. However, Heller requests
21   the opportunity to conduct jurisdictional discovery to determine whether this Court may
22   exercise personal jurisdiction over A-Tech and The Bean. Because the Court finds this
23   threshold issue has not been satisfactorily addressed, the Court hereby grants Heller's request
24   for leave to conduct jurisdictional discovery. The Court will allow limited jurisdictional

---

[6] Moreover, the Court notes that "litigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister state." *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993) (citing *Frank Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) and *Pacific Atl. Trading Co. v, M/V Main Exp.*, 758 F.2d 1325, 1330 (9th Cir.1985) ("foreign-acts-with-forum-effects jurisdictional principle must be applied with caution, particularly in an international context") (internal quotations and citations omitted)).

discovery on the narrow issues of whether Cepia was at The Bean between September 18 and September 26, 2008 and whether Cepia had a business relationship with The Bean and/or A-Tech prior to September 16, 2008. The Court reserves ruling on A-Tech and The Bean's motion to dismiss.[7]

**CONCLUSION**

For the forgoing reasons, the Court grants in part and denies in part Cepia's motion for sanctions, denies the cross-motion for sanctions filed by Plaintiff Jason G. Heller ("Heller"), grants in part and denies in part Cepia's motion to dismiss, and reserves ruling on A-Tech and The Bean's motion to dismiss and grants Heller's request to conduct jurisdictional discovery. Plaintiff's counsel, Mr. Matz, is ordered to pay $5,000.00 to Cepia within ten days of the date of this Order.

The Court is permitting Heller to engage in jurisdictional discovery on the application of the alter ego doctrine, whether Cepia was at The Bean between September 18 and September 26, 2008, and whether Cepia had a business relationship with The Bean and/or A-Tech prior to September 16, 2008. Heller may take this limited jurisdictional discovery to be completed within the next three months, or by no later than April 4, 2012. After completion of jurisdictional discovery, the Court will hear the parties' positions on the threshold issue of personal jurisdiction. By no later than April 20, 2012, Heller may file a supplemental opposition brief setting forth its prima facie case of jurisdiction over the A-Tech and The Bean. By no later than April 27, 2012, A-Tech and The Bean may file a supplemental reply brief. The

---

[7] The Court notes that, to date, A-Tech and The Bean have not satisfactorily met their burden to demonstrate whether the exercise of personal jurisdiction over them would be unreasonable. They state in a cursory manner that it would be a considerable burden on them to defend in California, without providing any supporting facts such as whether they are small companies or whether traveling to California would be a significant drain on their resources. Moreover, despite A-Tech and The Bean's assertions that their past and present relationships with other California customers are irrelevant, the extent of their business relationships with California customers is relevant to the determination of the nature of any conflict with the sovereignty of China. A-Tech and The Bean fail to provide any meaningful description regarding the extent of their relationships with Heller and with other California customers. However, because the Court is providing Heller another opportunity to demonstrate purposeful availment or direction and that his claims against A-Tech and The Bean arises out of or relates to those activities, in their supplemental reply, A-Tech and The Bean will have another opportunity to meet their burden regarding reasonableness.

Court will set a hearing date by separate order on A-Tech and The Bean's motion to dismiss if it deems such a hearing to be necessary.

The Court admonishes the parties, Heller in particular, to tone down the rhetoric and hyperbole and to focus on the substance of the claims in future filings.

**IT IS SO ORDERED.**

Dated: January 4, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE