UNITED STATES DISTRICT COURT

Northern District of California

JASON G. HELLER,

            Plaintiff,

  v.

CEPIA L.L.C., et al.,

            Defendants.
_____/

No. C 11-1146 MEJ

**DISCOVERY ORDER RE: DKT. NOS. 73 AND 80**

     In this action, Plaintiff Jason Heller alleges that he developed a robotic toy hamster whose trade secrets were misappropriated by Defendant Cepia, L.L.C. (along with other defendants) when it released its own line of toy hamsters. Dkt. No. 1. Defendant moved to dismiss Plaintiff's claims pursuant to FRCP 12(b)(6), and the Honorable Jeffrey S. White ruled on this motion on January 4, 2012. Dkt. No. 83. Judge White dismissed each of Plaintiff's common law claims, but denied Defendant's motion to dismiss the trade secrets misappropriation claim. *Id.* The parties' joint discovery dispute letters, filed last month, are now ripe for this Court's review and discussed in turn below. Dkt. Nos. 73 and 80.

     The first dispute between the parties is whether Plaintiff's trade secret identification complies with California Civil Code section 2019.210 ("Section 2019.210"). Dkt. No. 80. Both parties agree that under this statute, a "plaintiff suing for misappropriation of trade secrets must identify them with 'reasonable particularity' before commencing discovery related to the claimed secrets." *M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, 2011 WL 92734, at *1 (N.D. Cal. Jan. 10, 2011) (citing Cal. Civ. Code § 2019.210). The Court in *Advanced Modular Sputtering, Inc. v. Superior Court* explained the "reasonable particularity" requirement as follows:

> "Reasonable particularity" mandated by section 2019.210 does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation. Nor does it require a discovery referee or trial court to conduct a miniature trial on the merits of a misappropriation claim before discovery

may commence. Rather, it means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational, under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits.

132 Cal.App.4th 826, 835-36 (2005) (citations omitted) (noting that the "degree of 'particularity' that is 'reasonable' will differ, depending on the alleged trade secrets at issue in each case"). Courts have broad discretion in determining whether a party's identification of trade secrets satisfies Section 2019.210. *M.A. Mobile Ltd.*, 2011 WL 92734, at *1. "The identification is to be liberally construed, and reasonable doubts concerning its sufficiency are to be resolved in favor of allowing discovery to commence." *Brescia v. Angelin*, 172 Cal.App.4th 133, 152 (2009) (citing *Advanced Modular*, 132 Cal.App.4th at 836-37).

Defendant contends that Plaintiff's trade secret identification has failed to meet the above "reasonable particularity" standard and seeks a protective order barring him from commencing discovery until he has done so. Defendant specifically points to the following problems with Plaintiff's identification: (1) Plaintiff claims that each product feature that he identified (31 in total) can be combined with each other to comprise a trade secret, which would result in an unreasonable list of over 10 million trade secrets; (2) Plaintiff uses catch-all language as well as general and vague terms so that he has maximum flexibility to alter his list of trade secrets at a later date; and (3) Plaintiff only lists high-level features and characteristics of toy hamsters that cannot qualify as trade secrets.

The issue raised in this dispute between the parties is common to trade secret misappropriation claims. *See* Charles T. Graves & Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, 5 Nw. J. Tech. & Intell. Prop. 68 (2006). A defendant is usually never satisfied with a plaintiff's identification of trade secrets. A plaintiff, on the other hand, rarely provides a precise identification of the alleged trade secrets at issue. The solution to this problem is not to conduct a miniature trial about the trade secret identification during the early stages of the litigation. The better approach is to require the plaintiff to finalize its identification of trade secrets and then rely on this identification for the remainder of the case. Such an approach was

used by the Court in *SuccessFactors v. Halogen Software.* Case No. 10-5471 SBA (BZ) (N.D. Cal. June 20, 2011). In *SuccessFactors*, the plaintiff was permitted to amend its identification of trade secrets after the defendant expressed its concern that the identification was "general and conclusory." *Id.* After the amendment, the Court precluded the plaintiff from "introducing at trial or at any pretrial proceeding information about a trade secret" that had not been identified earlier, unless the plaintiff could show in good faith that it was not aware earlier that the particular trade secret had been stolen by the defendant. *Id.*

The Court has reviewed Plaintiff's trade secret identification as well as the declarations submitted by Defendant in this matter. The Court understands Defendant's concerns about Plaintiff's list being vague and lacking specificity. But, at the same time, the Court is mindful that at this stage of the litigation it should liberally construe Plaintiff's identification and not attempt to determine whether the product features listed by Plaintiff constitute trade secrets. *See Advanced Modular*, 132 Cal.App.4th at 836-37. The Court therefore applies the approach used in *SuccessFactors* to this matter. Plaintiff is permitted, if he chooses, to amend his identification of trade secrets up until January 31, 2011. After that date, Plaintiff is precluded from introducing at trial or at any pretrial proceeding any information about a trade secret that he has not specifically identified previously, unless he can establish good cause for the omission.[1]

The second dispute between the parties concerns Plaintiff's document requests. Dkt. No. 73. Defendant's primary objection is that it will not produce any documents responsive to Plaintiff's requests until he properly discloses his trade secrets. This objection has been resolved by the Court's decision above. Plaintiff also raises three other issues: (1) Defendant refuses to produce documents from certain custodians; (2) Defendant requests that the parties use keyword searches to limit the number of responsive documents; and (3) Defendant contends that any documents generated after its toy hamsters were already on store shelves (May 2009) should not be searched or produced.

---

[1] The intent of this ruling is to prevent Plaintiff from later providing additional and more specific details about his trade secrets, whether it is to contest a challenge from Defendant that the product features do not constitute trade secrets or to determine the scope of discovery.

3

1	The Court does not rule on the first issue regarding custodians. The parties' joint letter shows
2	that they have not properly met and conferred about this issue since many of Plaintiff's arguments
3	appear to be moot. For instance, Defendant has agreed to produce documents from seven of the eight
4	custodians mentioned by Plaintiff and suggested that documents from the eighth custodian (Jennifer
5	Risley) be produced, if necessary, at a later time. The parties are ordered to meet and confer to
6	resolve this issue. If a dispute remains, another joint discovery letter may be filed.

7	With respect to the use of keyword searches, the Court does not find Plaintiff's position
8	persuasive. Plaintiff contends that he "cannot gamble on search terms" because potentially relevant
9	documents may be missed, particularly because some of the documents were generated by individuals
10	who do not speak English. But in this age of electronic discovery, this Court, like others, finds that
11	the use of keyword searches is appropriate under certain circumstances to reduce the number of
12	potentially responsive documents. *See, e.g.*, *William A. Gross Constr. Assocs., Inc. v. Am, Mfrs. Mut.*
13	*Ins. Co.*, 256 F.R.D. 134, 134-36 (S.D.N.Y. 2009). This is especially true for a matter like this where
14	Defendant's eight custodians possess about 200,000 megabytes of e-mail files that would need to be
15	processed and then reviewed for privilege and responsiveness. Moreover, Defendant is not limiting
16	its production to only the documents generated through the keyword searches. Rather, it has already
17	collected responsive documents through a focused search of its product development documents and
18	intends to produce these documents to Plaintiff without limiting them for keywords. For the
19	foregoing reasons, the parties are ordered to meet and confer and in cooperation craft appropriate
20	keywords to use in a search of Defendant's documents.[2] *See William A. Gross Constr. Assocs.*, 256
21	F.R.D. at 134-36.

22	The last issue raised by the parties is whether Defendant has to produce documents that were
23	generated after its toy hamsters were placed on store shelves in May 2009. The only reason Plaintiff
24	provides for its request for post-May documents is that Defendant did not abandon its patent

---

[2] If Plaintiff learns during the course of discovery that relevant documents may not have been produced due to the limitations of the keywords used by the parties, he may at that time renew his request for Defendant to review all of the custodians' documents, provided that such a request has evidentiary support.

4

application for the toy hamsters until January 10, 2010. Defendant correctly points out that the chance that such documents would lead to the discovery of admissible evidence is minimal because for Defendant to have stolen Plaintiff's trade secrets it would have had to do so before it released its product. Based on the record before it, the Court cannot find that the burden placed on Defendant to search an additional eight months' worth of documents is warranted by the marginal chance that there may be relevant documents. Plaintiff's request is therefore denied, and Defendant is only required to produce documents generated up until June 2009, one month after its toy hamsters were placed on store shelves.[3]

**IT IS SO ORDERED.**

Dated: January 20, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

---

[3] This request is also denied without prejudice. If Plaintiff learns through discovery that documents generated after June 2009 are likely to contain relevant information, he can renew his request.